CLAIR W. BOWMAN *v.* REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, WILLIAM H. SKINNER, JAMES M. ORGAN AND NORMAN K. KASSENBROCK, AS MEMBERS OF AND CONSTITUTING THE REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, AND ELKHART INSTITUTE OF TECHNOLOGY.

[No. 2-273A55. Filed November 27, 1973.]

*Howard E. Petersen,* of LaGrange, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellee.

SULLIVAN, J.—Appellant Bowman appeals a negative decision of the Employment Security Review Board which denied him unemployment benefits. Two of the four specifications in his Assignment of Error, however, are directed solely to the decision of the liability referee. We are authorized to review only the decision of the Review Board. *Davis* v. *Review Board* (1973), 157 Ind. App. 455, 300 N.E.2d 690; *McKinley* v. *Review Board* (1972), 154 Ind. App. 387, 290 N.E.2d 108. Thus, the two specifications concerning the decision of the referee present no issue for our review.

A third specification asserts error by the Review Board in failing to permit Bowman to introduce additional evidence. The controlling administration rule with respect to introduction of additional evidence is Rule 4 of the Indiana Employment Security Board as authorized by IC 22-4-17-6, Ind. Ann. Stat. § 52-1542e (Burns 1964). This Rule authorizes the Review Board in its discretion to admit additional evidence for good cause shown. *Ladd* v. *Review Board* (1971), 150 Ind. App. 632, 276 N.E.2d 871; *Thomas Products Co.* v. *Review*

*Board* (1969), 145 Ind. App. 425, 251 N.E.2d 473. The Rule, however, requires that:

> "An application for leave to introduce additional evidence made by either party shall set forth the names and residences of the witnesses whose testimony will be offered and the facts to which they are expected to testify. If the new evidence be documentary, then a copy of the document proposed to be introduced shall accompany the application."

> Bowman's application does not meet the aforesaid requirement. It was not error therefore for the Board to refuse such additional evidence.

Appellant's final assertion of error challenges the constitutionality of Chapter 14, Section 3 of the Unemployment Security Act. The provision so challenged is IC 22-4-14-3, Ind. Ann. Stat. § 52-1538b (Burns 1973 Supp.) which insofar as pertinent provides:

> "An unemployed individual shall be eligible to receive benefits with respect to any week only if he is physically and mentally able to work, is available for work and is found by the division to be making an effort to secure work. . . ."

To be sure, the decision of the Review Board was premised upon its conclusion that Bowman failed to meet the availability requirements of 14-3 but such conclusion is subjectively intertwined with an interpretation of IC 22-4-3-2, Ind. Ann. Stat. § 52-1527a (Burns 1964) which provides:

> "An individual is 'partially unemployed' when, because of lack of available work, he is working less than his normal customary full-time hours for his regular employer and his remuneration is less than his weekly benefit amount in any calendar week, but no individual shall be deemed totally, part-totally, or partially unemployed in any week which he is regularly and customarily employed full-time on a straight commission basis."

The constitutional challenge of Bowman is founded upon the argument that the statute or combination of statutes construed by the Board unreasonably excludes from the benefits of the

Employment Security Act persons who are remunerated upon a commission basis.

We are unable to undertake an informed review of the Board's decision for reasons hereinafter set forth. Our inability is occasioned by the insufficiency of the Statement of Facts, Findings and Conclusions as made by the Board, which are as follows:

"STATEMENT OF FACTS: Claimant testified that he began working for this employer in October 1968, enrolling prospective students either at their residence or the employer's school; that he no longer performed such work for the employer after July 1, 1972, because on said date a law became effective which requires vocational schools to have special bonding for obtaining a license to operate, consisting of $25,000 for the school and $5,000 for each agent; that the employer was unable to obtain such bonding due to the reluctance of bonding companies to write such bonds for private schools because the law involved failed to state clearly what constituted a violation thereof; that he was advised as late as July 21, 1972, by the executive director of the Accrediting Commission that there was no bond on file for him or the employer; that no students were enrolled by him after July 1, 1972, since he could have been subjected to a fine or jail sentence if he had done so without proper bond or license; that he did not go back to work for the employer after July 1, 1972; that he was on a straight commission basis during July 1972; and that he would have worked the week ending July 22, 1972, if he and the school had been properly bonded.

Claimant testified further that after July 1, 1972, he talked only with previously enrolled students to answer their questions; that he did receive commissions from the employer after July 1, 1972 (Tr. p. 8, line 30), part of which was money owed to him by the employer for as long as 12 months; that he received a temporary permit around August 1, 1972, which was not properly signed; that his work experience includes seven years in guided missiles; that putting up his bond was optional but the employer had agreed to post bond for him; and that he looked for work after July 21, 1972.

FINDINGS AND CONCLUSIONS: The Review Board finds that claimant was hired on a straight commission

basis by this employer to enroll students either at their residence or the employer's school.

It further finds that claimant did not perform such work for the employer after July 1, 1972, since he and the employer were not in compliance with a law which became effective on that date requiring that the employer, as a private vocational school, post a minimum bond of $25,000 and $5,000 for its agents, including claimant.

It further finds that claimant enrolled no new students after July 1, 1972, and only answered questions of students who had enrolled prior to that date because he understood the aforementioned law provided a penalty of a fine and jail if he continued to enroll students without posting the required bond.

It further finds that claimant continued to receive commissions from the employer after July 1, 1972, on students he had enrolled prior to that date.

It further finds no definite termination date of claimant's status as a full-time agent earning straight commission paid by the employer prior to that termination, evidenced by Division Exhibit 6 in the transcript which is a letter of termination from this employer dated August 30, 1972.

The Board concludes that claimant was essentially employed full time by the employer on a straight commission basis and, accordingly, failed to meet the availability requirements of Chapter 14-3 of the Act as of week ending July 22, 1972, when interpreted in the terms of Chapter 3-2 of the Act."

In the cause before us, Bowman might well meet the basic definition of one who is "partially unemployed" in that "because of lack of available work" [such lack being occasioned by operation of law, i.e., the bonding requirement], he was working less than his normal full-time hours for Elkhart Institute of Technology. It is the Board's position, however, that the concluding sentence of § 52-1527a which states that no individual may be deemed partially unemployed "in any week he is regularly and customarily employed full-time on a straight commission basis", precludes an award of benefits.

At the outset it must be observed that no question is before us with respect to whether or not claimant Bowman is or

was an employee of Elkhart Institute. The findings and conclusions of the Review Board repeatedly refer to Elkhart as the "employer" and states that the claimant "was essentially *employed* full time by the *employer* on a straight commission basis."

In this connection it is noted that most case law concerning application of unemployment compensation laws to commission salesmen revolves around whether such salesman is or is not an "employee". *See National School of Aeronautics, Inc.* v. *Division of Employment Security* (1950 Mo. App), 226 S. W. 2d 93; Anno. 29 ALR 2d 751. Section 52-1527a does not state that persons remunerated upon a straight commission basis are not "employees". It states only that such persons may not be deemed unemployed during any week in which they are "regularly and customarily employed full-time on a straight commission basis."

We recognize that the Review Board is not limited to a determination of the issue or issues presented and determined by the appeals referee. *Ogilvie* v. *Review Board* (1962), 133 Ind. App. 664, 184 N.E.2d 817. It is apparent, however, that insofar as here pertinent, the only issue litigated by the parties *at any stage* was the "availability" of Bowman for work as of the week ending July 22, 1972.[1] The ultimate decision of the Board cannot rest upon

---

1. IC 22-4-17-6, Ind. Ann. Stat. § 52-1842e (Burns 1964) requires a Notice of Hearing which identifies the issues to be decided. The Notice of Referee Hearing stated:

"Issue Involved. Able, and available and actively seeking work as of week ending 7-22-72."

The Decision of Appeals Referee stated:

"Claimant was heard on his appeal from a deputy's determination dated September 7, 1972 which held that claimant was not available for work during the week ending July 22, 1972 within the meaning of Chapter 14 Section 3 of the Act.

\* \* \*

"FINDING # 1. In regard to the appeal, the Referee finds that the claimant has placed such limitations upon his employment that he must be held to be not available under the provisions of Chapter 14, Section 3 of the Act."

the resolution of any other issue. *See J. I. Case Co.* v. *Sandefur* (1964), 245 Ind. 213 at 216, 197 N.E.2d 519; *Hacker* v. *Review Board* (1971), 149 Ind. App. 223, 271 N.E.2d 191 at 195; *Industrial Laundry* v. *Review Board* (1970), 147 Ind. App. 40 at 42 (footnote 3), 258 N.E.2d 160; *Youngstown Sheet & Tube Co.* v. *Review Board* (1954), 124 Ind. App. 269 at 272, 116 N.E.2d 648.

The concept of "availability" for work so as to qualify one for unemployment benefits carries with it in Indiana as elsewhere, a general requirement that the claimant must be actively seeking employment. *Ladd* v. *Review Board, supra;* Broden, *Law of Social Security & Unemployment Insurance* (1962), § 8.10. As noted, however, although the Board found the claimant to be unavailable, it did so in the context that he was "essentially" employed full time by Elkhart during the week in question (whether in the opinion of the Board the qualifying adverb diminishes the extent to which claimant's status constitutes "employment", "full time employment" or "full time employment on straight commissions" is unclear). It's finding was not in the context of "availability" in the sense that the term is deemed controlling for unemployment benefit eligibility.

As held in *Miles* v. *Review Board* (1951), 120 Ind. App. 685, 690, 96 N.E.2d 128 quoting from *Walton* v. *Wilhelm* (1950), 120 Ind. App. 218, 91 N.E.2d 373:

" 'The phrase "available for work" is not defined by statute, nor are we able to formulate a definition thereof which will serve as an infallible guide. Whether an individual is "available for work" within the meaning of our statute must necessarily depend in each case upon the facts and circum-

Bowman's Request for Appeal to Review Board stated:
"Points in Dispute. Able and available and actively seeking work as of week ending 7-22-72."
and the Decision of the Review Board stated:
"The point in dispute before the Review Board is whether claimant was unavailable for work as of week ending July 22, 1972, within the meaning of Chapter 14-3 of the Act."

stances surrounding that case, considered *against the background of the purposes of the legislation and the objectives at which it aims. . . .'*"

The findings of fact with respect to the issue before the Board, i.e., availability, are insufficient to permit our review.

Even were we to look beyond the issue of availability and to reason that the decision of the Review Board is arguably sustainable without regard to Bowman's availability, i.e., that § 52-1527a precludes payment of unemployment benefits to Bowman, the findings are insufficient to afford appropriate review. Benefit disqualification by reason of § 52-1527a requires that the individual be "regularly and customarily employed full-time on a straight commission basis." The facts found by the Board are in this context only that Bowman had not been terminated and that he received payments of commissions which had been earned prior to July 1. The facts as stated do disclose that Bowman's post-July 1 activity, whether full-time or sporadic (a question not resolved by the evidence, the Statement of Facts or the Findings) was not the activity in which he regularly and customarily engaged, i.e., the enrollment of students, and from which his remuneration was derived. No finding is made to the effect that during the period July 1—August 30, or any portion thereof, Bowman was engaged full-time upon the business of Elkhart Institute. No facts are found with respect to whether during the week of July 22, and thereafter, Bowman was free to enroll new students without risk of violation of the bonding requirements of the Indiana statute. The precise terms of Bowman's "employment", whether fixed by written contract or otherwise were not the subject of findings by the Board. Such factors might well bear upon a determination that a claimant is or is not "regularly and customarily employed full time".

In short, the state of the findings before us do not permit informed appellate review of the Board's decision. *Bendix Corp.* v. *Radecki & Review Board of the Indiana Employment Security Div.* (1973), 158 Ind. App. 370, 302 N.E.2d 847.

Accordingly, the case is reversed and remanded to the Review Board for further proceedings not inconsistent with this opinion, which further proceedings may, in the discretion of the Board, include the taking of further evidence.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 303 N.E.2d 840.